UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

REGINALD McFADDEN,

                          Petitioner,                                    06 Civ. 13330 (KMK)(PED)

         -  against -                                                     REPORT AND
                                                                                RECOMMENDATION
GEORGE E. PATAKI, DALE ARTUS,
Superintendent, Clinton Correctional
Facility, and THE ATTORNEY GENERAL
OF THE STATE OF NEW YORK,

                          Respondents.

-------------------------------------------------------------X

TO:    THE HONORABLE KENNETH M. KARAS,
          UNITED STATES DISTRICT JUDGE

         Petitioner Reginald McFadden ("Petitioner"), appearing pro se and incarcerated at the

Auburn Correctional Facility, brings the instant habeas corpus petition pursuant to 28 U.S.C. §

2254, challenging his September 7, 1995 conviction from the New York State Supreme Court,

Rockland County.[1]  As modified following an appeal, Petitioner stands convicted of three counts

of rape in the first degree (New York Penal Law § 130.35(1)), one count of burglary in the first

degree (New York Penal Law § 140.30(2)), one count of robbery in the first degree (New York

Penal Law § 160.15(1)), one count of aggravated sexual abuse in the first degree (New York

Penal Law § 130.70(1)(a)), one count of assault in the second degree (New York Penal Law §

120.05(1)), and one count of grand larceny in the fourth degree (New York Penal Law §

155.30(1)).  Petitioner was sentenced, as a second violent felony offender, to consecutive

indeterminate terms of from twelve and one-half to twenty-five years in state prison on the three

---

[1] This petition comes before me pursuant to an order of reference dated February 27, 2007
Docket # 3, which was reassigned to the undersigned on January 12, 2009.  Docket # 34.

first degree rape counts, to run concurrently with an indeterminate term of from two to four years on the fourth degree grand larceny count, and from three to six years on the second degree assault count.

## I.   PETITIONER'S CLAIMS

Interpretation of this petition presents challenges.[2]   Petitioner has submitted nearly 400 pages of written argument to the Court, exclusive of exhibits, but nowhere in this mass of paper is there a succinct statement of the issues presented for review.  Instead, the Court is confronted with a series of prolix, rambling and repetitive pleadings which – although typewritten – are notable for their lack of structure, inconsistent pagination and paragraph enumeration, indiscriminate insertion of unidentified exhibits, and conclusory allegations of wrongdoing.  In no way do Petitioner's filings comport with Rule 2(d) of the Rules Governing Section 2254 Cases in the United States District Courts, which state that "[t]he petition must substantially follow . . . the form appended to these rules[.]"

Notwithstanding these challenges, the Court has undertaken a careful review of Petitioner's submissions.  Construing the petition liberally, and interpreting it as raising the strongest arguments it suggests, Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006), I read the petition as seeking habeas relief on fifteen (15) separate grounds:

(1)   that Petitioner was denied his Sixth Amendment right to counsel based upon

---

[2] There is no unitary "petition."  A document entitled "Affidavit In Support of Constitutional Issues," dated May 10, 2006 and received by this Court's Pro Se Office on May 19, 2006, was ultimately docketed as "Petition For Writ Of Habeas Corpus" on November 20, 2006.  Docket # 1.  A second, massive document entitled "Memorandum of Law In Support of Writ of Habeas Corpus," also dated May 10, 2006 and also received by Pro Se on May 19, 2006, was likewise docketed on November 20, 2006.  Docket # 2.  The file also contains – and I have therefore considered – a document entitled "Petitioner's Affidavit In Support of Merits of Constitutional Issues," dated July 14, 2006, which has now been docketed.  Docket # 58.

"deliberate interference" with Petitioner's right to consult with counsel;

(2)     that the trial court improperly refused to permit Petitioner to subpoena material witnesses;

(3)     that the prosecution committed various Brady violations;

(4)     that Petitioner was denied due process based upon the trial court's bias;

(5)     that Petitioner was denied access to legal assistance while his case was pending;

(6)     that Petitioner was denied First, Fourth, Sixth, and Fourteenth Amendment rights in connection with his defense at trial and on appeal due to transfers that occurred while he was in custody;

(7)     that Petitioner was denied the right to file an appeal of his sentence due to "official obstruction" at the correctional facility at which he was being held;

(8)     that exculpatory evidence demonstrates his actual innocence;

(9)     that the trial court improperly conducted a Frye hearing mid-trial;

(10)    that Petitioner was denied the right to testify before the grand jury;

(11)    that Petitioner was convicted upon a coerced confession obtained through denial of Petitioner's right to counsel, police brutality, and by the "ruse" of police misrepresentation that petitioner was being detained on a parole violation, rather than the crimes for which he was ultimately charged;

(12)    that Petitioner was convicted as a result of evidence obtained through an unlawful search and seizure;

(13)    that Petitioner was convicted in violation of his right against self-incrimination;

(14)    that Petitioner's conviction was obtained through the use of "irreparably suggestive" pre-trial identification procedures; and

(15)    that the trial court improperly rejected a motion filed by Petitioner in 1999 pursuant to CPL § 330.30.[3]

---

[3] It should be noted that Respondent interpreted the petition as asserting the same claims identified herein by the Court, Docket # 10 (Opposition Memorandum ("Opp'n Memo."), at 16-17), and Respondent's opposition papers therefore addressed those claims. Id. Petitioner's reply

[footnote continued on following page]

3

For the reasons set forth below, I conclude, and respectfully recommend that Your Honor should conclude, that this petition for a writ of habeas corpus should be DENIED.

## II.    BACKGROUND

### A.    The Crime

On the evening of September 21, 1994, Petitioner attacked a South Nyack woman, J.B.,[4] as she was carrying recyclables to the front curb of her home. Following the initial attack, Petitioner dragged J.B. into her home and raped her. Petitioner then forced J.B. into her car, drove her to a grassy area, and raped her a second time. Following the second rape, Petitioner placed J.B. into a sleeping bag in the back seat of her car and drove to three or four banks, where he withdrew a total of $500.00 from J.B.'s bank account using her ATM card.

Petitioner eventually returned with J.B. to her home, where he forced J.B. into her bedroom and demanded her jewelry. Petitioner then forced J.B. to remove her clothes, forced her into the bathroom, and emptied a bottle of hair conditioner into her vagina in an effort to

---

[footnote continued from previous page]

papers, in turn, focused upon the same issues raised in Respondent's brief. Docket # 8 (Reply). Moreover, the Court's interpretation of Petitioner's claims substantially overlaps with Petitioner's own characterization of the first habeas petition he filed in this Court. See Docket # 58 (Petitioner's Affidavit in Support of Merits of Constitutional Issues at 21-23.) Nonetheless, Petitioner's submissions are replete with suggestions of error which could be read as attempts to raise other claims. I have not addressed complaints which (1) are too vague and conclusory to permit analysis; (2) clearly are not grounded in federal law or the U.S. Constitution; (3) raise claims which are not cognizable in a habeas corpus action; and/or (4) are clearly inappropriate for federal habeas review.

[4] In accordance with N.Y. Civil Rights Law § 50-b, the Court will refer to the rape victim by her initials.

remove evidence of the rapes that had occurred earlier in the evening.  Petitioner instructed J.B. to take a shower for the same reason.

After J.B. had showered, Petitioner returned her to the back seat of her car.  After approximately fifteen (15) minutes driving the car, Petitioner again forced J.B. out of the car and raped her a third time.  Following the third rape, Petitioner returned J.B. to the back seat of her car, again placed her inside the sleeping bag, and once again returned to J.B.'s home.  Petitioner bound J.B.'s wrists and ankles with tape as she lay on her bed, and then left J.B.'s home.

Early the next morning, after freeing herself from the tape around her ankles and wrists, J.B. contacted her boyfriend and son, who took her to the South Nyack Hospital, where a rape kit was performed.

On October 6, 1994, after police determined that they had probable cause to arrest Petitioner, they stopped his van while he was driving a short distance from his Spring Valley, New York home.  After initially stopping for the police, Petitioner pushed one of the police officers and fled.  During the ensuing chase, police witnessed Petitioner throw to the ground a plastic bag containing jewelry.  It was later determined that the jewelry contained in the bag resembled jewelry Petitioner had taken from J.B. on the night of September 21, 1994.

Following his arrest, Petitioner was given a Miranda warning.  Petitioner thereafter recounted for police many of the events of September 21, 1994, including details of the rapes, his beating of J.B., and his taking of cash and jewelry from J.B.'s home.  The prosecution presented evidence that, following his arrest, Petitioner made the following statement to police: "Tell the woman that I'm sorry, I'll be doing penance for the rest of my life."

5

Forensic testing, the results of which were admitted into evidence at trial by the prosecution, indicated a match between DNA extracted from sperm recovered from J.B. and blood and hair samples taken from Petitioner.

Petitioner testified at trial.  Petitioner denied that he ever received a <u>Miranda</u> warning, and claimed that police personnel physically and verbally abused him in an effort to obtain information.

### B.      Proceedings in the Trial Court

Petitioner was indicted by a grand jury on October 12, 1994, and charged with four counts of burglary in the first degree (N.Y. Penal Law § 140.30(2)), two counts of robbery in the first degree (N.Y. Penal Law § 160.15(1)), three counts of rape in the first degree (N.Y. Penal Law § 130.35(1)), one count of kidnapping in the second degree (N.Y. Penal Law § 135.20), two counts of aggravated sexual abuse in the first degree (N.Y. Penal Law § 130.70(1)(a)), one count of assault in the second degree (N.Y. Penal Law §120.05(1)), and one count of grand larceny in the fourth degree (N.Y. Penal Law § 155.30(1)).  Ex. A (Indictment No. 94-247).[5]

Through his appointed counsel, Petitioner filed a pre-trial motion to suppress his identification, statements made to police, and physical evidence obtained from his home, van, and person.[6]  The trial court conducted a combined <u>Wade</u>, <u>Mapp</u>, <u>Huntley</u> hearing in May and June of 1995, and determined that "there had not been any unduly suggestive procedures

---

[5] References to "Ex." are to the applicable exhibit contained in the four-volume Appendix accompanying Respondent's Opposition Declaration.

[6] Although neither party has provided the Court with a copy of the motion to suppress, there is no dispute that Petitioner filed such a motion.  <u>See</u> Ex. L (Appellate Brief, at pg. 5); Decl. in Opp'n to Habeas Pet., at ¶ 10.

employed which might lead to an irreparable misidentification." Docket # 42 (Suppression Hearing Decision Tr., at 7-9). The trial court denied petitioner's motion to suppress his statements and identification, but granted in part and denied in part his motion to suppress physical evidence.[7]

During one of the suppression hearing sessions on June 1, 1995, defendant's counsel acknowledged his prior receipt of a five-page laboratory report regarding DNA analysis prepared by the prosecution's experts. Although the trial court did not hold a pre-trial hearing on the admissibility of this evidence, Petitioner moved for a Frye hearing two days prior to commencement of trial. The trial court granted Petitioner's motion for a Frye hearing, which it conducted mid-way through the trial on August 14, 1995. Defendant did not object to the manner or timing of the Frye hearing, nor did he object that he had not received relevant material in advance of that hearing. Immediately following the Frye hearing, the court determined that PCR testing – the method of DNA testing at issue – "is an accepted technology within the relevant scientific community [for] . . . the jury [to] hear this evidence and weigh it." SH: 1501-1502.[8] Based upon this finding, the court permitted the prosecution to present its DNA evidence at trial.

Although Petitioner was initially represented by appointed counsel prior to trial, he filed a motion on May 22, 1995 in which he sought permission to represent himself at trial. SH: 1-44.

---

[7] Although the record reflects that the trial court entered a written order on July 25, 1995 resolving issues raised during the suppression hearing, see, e.g., Ex. L (Appellate Brief, at 56), Decl. in Opp'n to Habeas Pet., at ¶ 10, neither party has appended that order to their briefs.

[8] References to "SH," followed by a number, are to the transcript of the Suppression Hearing conducted in connection with Petitioner's trial. Docket # 37-41.

After an exhaustive inquiry in which the trial court determined that Petitioner was making a knowing, voluntary, and intelligent waiver of his right to the assistance of counsel, SH: 43, the court granted Petitioner's request to proceed pro se at trial. SH: 44. However, at Petitioner's request, the court ordered appointed counsel to represent Petitioner in the above-referenced suppression hearing, and to continue representing Petitioner in the limited role of "stand-by legal advisor" in the event Petitioner should wish to avail himself of legal counsel at any point during the trial. SH: 44.

On August 24, 1995, the jury found Petitioner guilty. Petitioner is serving consecutive indeterminate terms of from twelve and one-half to twenty-five years imprisonment on three first degree rape counts, together with concurrent terms on the lesser counts.[9]

## C.   **Post-Trial Proceedings**

### 1.   ***State Court Proceedings***

#### a.   ***First Motion to Vacate – June 22, 1996***

On June 22, 1996, Petitioner filed a pro se motion to vacate his conviction pursuant to CPL § 440.10. Ex. B (Motion to Vacate).[10] On July 30, 1996, the trial court denied Petitioner's

---

[9] Although Respondent has not provided the Court with a copy of the sentencing transcript, there is no dispute that Petitioner was sentenced on September 7, 1995 as indicated.

[10] Petitioner advanced the following grounds for relief in the motion: (1) that the prosecution failed to turn over all discoverable materials; (2) that Petitioner was denied a fair trial due to the admission of perjured testimony; (3) that "fruit of the poisonous tree" evidence was erroneously admitted at trial; (4) that the public defender failed to turn over "every piece of paper" relating to the case; (5) that Petitioner was denied a fair trial due to the court's refusal to permit him to call certain witnesses; (6) that Petitioner was denied a complete Frye hearing; (7) that Petitioner was denied the effective assistance of counsel; (8) that the prosecution engaged in misconduct regarding seized property; (9) that the prosecution withheld exculpatory evidence; and (10) that Petitioner was denied the right to testify before the grand jury.

8

motion to vacate because the claims set forth therein were based upon the trial record, and therefore "[could] be reviewed only by direct appeal." Ex. D (July 30, 1996 Order). The trial court also noted that Petitioner did not "offer one shred of evidence or a single factual allegation to support the relief requested." Id. Petitioner did not seek leave to appeal denial of his first motion to vacate.

      **b.**     *Second Motion to Vacate – July 13, 1996*

On July 13, 1996, Petitioner filed a pro se motion to reconsider his previous motion to vacate, asserting the same grounds for relief set forth in his June 22, 1996 motion, but setting forth some factual allegations and legal authorities. Ex. E (Motion to Reconsider). On October 28, 1996, the court denied Petitioner's motion on the same grounds set forth in the court's July 30, 1996 order. Ex. H (October 28, 1996 Order). On December 16, 1998, Petitioner sought leave to appeal the court's October 28, 1996 decision, Ex. I (December 16, 1998 Application for Leave to Appeal), and on March 6, 1997, the Second Department of the New York Supreme Court's Appellate Division ("Appellate Division") denied leave to appeal. Ex. K (March 6, 1997 Order).

      **c.**     *First Direct Appeal – Conviction and Original Sentence*

On April 28, 1998, Petitioner's appointed counsel filed a direct appeal in the Appellate Division, challenging both Petitioner's conviction and sentence. Ex. L (Appellant's Brief).[11] On direct appeal, Petitioner argued:

      (1)     that he was denied due process on account of an improper arraignment;

---

[11] By order of June 23, 1998, the Appellate Division granted Petitioner's request to file a supplemental pro se brief. Ex. N (June 23, 1998 Order). Petitioner thereafter submitted a 53-page handwritten pro se brief to supplement the brief previously submitted by his appellate counsel. Ex. R (Supplemental Pro Se Brief).

(2)     that the court erred in admitting testimony regarding a prior photo identification;

(3)     that the court failed to specify Petitioner's exact sentence;

(4)     that the court erred by sentencing Petitioner to consecutive terms;

(5)     that the victim's in-court identification was tainted by unduly suggestive line-up identification procedures;

(6)     that the court erred in not suppressing an oral confession obtained in violation of the United States Constitution;

(7)     that the court erred in admitting evidence obtained in violation of the Fourth Amendment;

(8)     that the court erred in allowing the prosecution to violate a pre-trial <u>Molineux</u> ruling;

(9)     that the court erred by conducting a mid-trial <u>Frye</u> hearing;

(10)    that the court provided an erroneous jury charge;

(11)    that the court permitted numerous bolstering errors;

(12)    that the prosecution delayed and/or denied Petitioner access to certain <u>Rosario</u> and <u>Brady</u> discovery;

(13)    that Petitioner was denied due process on account of the cumulative effect of trial errors, including:

    (a)     denial of right to testify before grand jury;

    (b)     "obstruction" from preparing a defense and obtaining aid of counsel;

    (c)     "excessive security";

    (d)     deprivation of access to telephone to contact potential witnesses;

    (e)     prosecutorial misbehavior;

    (f)     denial of right to call material witnesses and potential witnesses; and

    (g)     "hostile and improper action by complainant";

(14)    that there was insufficient evidence to support Petitioner's conviction.

Ex. L (Appellant Brief) (Claims 1-4); Ex. N (Supplemental Pro Se Brief) (Claims 5-14).

In an order dated May 3, 1999, the Appellate Division modified the judgment of

conviction by reversing Petitioner's conviction for second degree kidnapping on the grounds that

the kidnapping charge merged with other charges against Petitioner. People v. McFadden, 261

A.D.2d 417 (N.Y. App. Div. 1999). In addition to its dismissal of the second degree kidnapping

charge, the Appellate Division remitted the matter to the trial court for clarification of the

sentence previously imposed on Petitioner's convictions for first degree robbery, first degree

burglary, and first degree sexual abuse. Id. The Appellate Division affirmed the conviction and

sentence in all other respects. Id.

On May 27, 1999, on remittur from the Appellate Division, the trial court clarified that

Petitioner had been sentenced to concurrent indeterminate prison terms of from twelve and one-

half to twenty-five years on the first degree robbery conviction, the first degree burglary

conviction, and the first degree aggravated sexual abuse conviction, to run concurrently to the

three consecutive sentences already imposed on his convictions for first degree rape.[12]

On August 12, 1999, Petitioner's counsel filed a motion for an extension of time to file

for leave to appeal, which the Court of Appeals granted and treated as a timely leave application

(the "Leave Application"). Ex. V (Leave Application); People v. McFadden, Mo. No. 1073,

---

[12] Although neither party has provided the Court with a copy of the transcripts from the amended
sentencing, there is no dispute that Petitioner was re-sentenced as indicated herein. See, e.g., Ex.
YY (Appellant's Brief, at pg. 9).

1999 N.Y. LEXIS 2864 (N.Y. Sept. 9, 1999).[13]  In the Leave Application, Petitioner's counsel did not (1) identify the portions of Petitioner's conviction and/or sentence for which he would be seeking appellate review,[14] (2) identify the specific grounds upon which Petitioner would be seeking appellate review, or (3) set forth any facts underlying Petitioner's putative claims. Rather, the Leave Application merely stated that, "[u]pon information and belief, the issues to be presented are the denial of petitioner's right to a fair trial under the New York and United States Constitutions and Laws." Id.

Neither Petitioner nor his counsel subsequently submitted a leave application letter to the Court of Appeals specifying the basis for appellate review, nor did either of them forward the Appellate Division briefs for the Court of Appeals' consideration (nor are the Appellate Division briefs mentioned in the Leave Application).  On January 10, 2000, without having received any additional materials, the Court of Appeals denied leave to appeal.  People v. McFadden, 726 N.E.2d 491 (N.Y. 2000).

### d.  *Third Motion to Vacate – March 21, 1999*

On March 21, 1999, Petitioner filed a third pro se motion to vacate his conviction, asserting (1) denial of right to testify before the grand jury, (2) denial of a speedy trial, (3) ineffective assistance of trial counsel, (4) Brady and Rosario violations; and (5) that a conflict of interest prevented the prosecutor from trying the case fairly.  Ex. Z (Third Motion to Vacate). On July 7, 1999, the court denied Petitioner's motion on the basis that the issues contained

---

[13] Copies of unreported cases cited herein are being mailed to Plaintiff.  See Lebron v. Sanders, 557 F.3d 76 (2d Cir. 2009).

[14] The Leave Application makes specific reference to only one charge under the indictment: kidnapping in the second degree, the charge that the Appellate Division dismissed in its order of May 3, 1999.  Ex. V, at ¶ 2.

therein were "previously determined on the merits upon appeal from the judgment" and because the basis for Petitioner's motion was contained in the trial record, meaning that under CPL § 440 "the claim can be reviewed only by direct appeal." Ex. CC (July 7, 1999 Order).  On September 22, 1999, the Appellate Division denied leave to appeal.  Ex. FF (September 22, 1999 Order).

### e.    *First Coram Nobis Application – May 10, 1999*

On May 10, 1999, while his direct appeal and third motion to vacate were still pending, Petitioner filed a pro se coram nobis application with the Appellate Division, alleging ineffective assistance of counsel in connection with his direct appeal.  Ex. GG (First Coram Nobis Application).  Petitioner specifically claimed that his appellate counsel failed to include in the appellate brief certain arguments and legal theories requested by Petitioner, thereby requiring Petitioner to file a supplemental pro se brief without the assistance of counsel.  Id.  The first coram nobis application did not challenge appellate counsel's conduct in connection with the Leave Application.  Id.  On October 4, 1999, the Appellate Division denied Petitioner's application on the merits.  People v. McFadden, 265 A.D.2d 346 (N.Y. App. Div. 1999).  On October 29, 1999, the Court of Appeals denied leave to appeal.  People v. McFadden, 94 N.Y.2d 798 (N.Y. 1999).

### f.    *Motion to Set Aside the Conviction – May 17, 1999*

On May 17, 1999, while his direct appeal, third motion to vacate, and first coram nobis application were still pending, Petitioner filed a pro se motion with the trial court to set aside his conviction pursuant to CPL § 330.30, asserting (1) Rosario violations, (2) ineffective assistance of trial counsel, and (3) prosecutorial misconduct.  Ex. KK (Motion to Set Aside the Verdict).  On October 5, 1999, the trial court denied Petitioner's motion on the basis that his re-sentencing

13

"does not allow this court to review the verdict under CPL § 330.30." Ex. MM (October 5, 1999

Order).

On October 13, 1999, Petitioner filed an application with the Appellate Division for (1)

leave to appeal the trial court's denial of his CPL § 330.30 motion, and (2) appointment of

counsel for the purpose of pursuing a direct appeal of his May 27, 1999 resentencing. Ex. JJ

(October 13, 1999 Motion). In an order dated November 15, 1999, the Appellate Division (a)

denied Petitioner's request for leave to appeal denial of his CPL § 330.30 motion, and (b)

granted Petitioner's request for appointment of counsel for the purpose of pursuing direct appeal

of his May 27, 1999 resentencing. Ex. RR (November 15, 1999 Order).

### g.    *Motion to Set Aside Sentence – July 7, 2001*

On July 7, 2001, following denial of his first habeas petition (discussed below),

Petitioner filed a pro se motion pursuant to CPL § 440.20 to set aside his sentence on the ground

that the sentence was "unauthorized, illegal, or otherwise invalid as a matter of law" based upon

an "invalid second felony offender status." Ex. SS (Motion to Set Aside Sentence). In an order

dated September 25, 2001, the trial court denied the motion on the merits and "on procedural

grounds as well." Ex. UU (September 21, 2001 Order). Petitioner applied for leave to appeal,

and the Appellate Division denied his application on March 6, 2002. Ex. XX (March 6, 2002

Order).

### h.    *Second Direct Appeal – Resentencing*

On September 23, 2003, Petitioner's appointed counsel filed a second direct appeal on

Petitioner's behalf, this time challenging Petitioner's amended sentence of May 27, 1999. Ex.

YY (Appellant's Brief). Petitioner argued (1) that he was improperly re-sentenced due to the

14

absence of a pre-sentence investigation, (2) that his re-sentence and re-sentence enhancement were illegal, and (3) that the trial court erred in refusing to consider his CPL § 330.30 motion to set aside the verdict. Id. On April 5, 2004, the Appellate Division affirmed Petitioner's amended sentence. People v. McFadden, 6 A.D.2d 461 (N.Y. App. Div. 2004). On May 26, 2004, Petitioner filed a late application for a certificate granting leave to appeal, and the Court of Appeals denied his leave application on July 14, 2004. People v. McFadden, 782 N.Y.S.2d 702 (2004).

### i.   *Second Coram Nobis Application – June 15, 2004*

On June 15, 2004, again proceeding pro se, Petitioner applied for a second writ of error coram nobis in the Appellate Division, this time claiming that he was denied effective assistance of counsel in connection with his second direct appeal (concerning his May 27, 1999 amended sentence). Ex. FFF (Second Coram Nobis Application). On October 12, 2004, the Appellate Division denied Petitioner's application. People v. McFadden, 11 A.D.3d 564 (N.Y. App. Div. 2004). Petitioner did not seek leave to appeal to the Court of Appeals.

### j.   *Fourth Motion to Vacate – June 29, 2005*

On June 29, 2005, Petitioner filed a fourth pro se motion to vacate his judgment and sentence "under CPL Section 440.10, 440.20 or 440.30." Ex. JJJ (Fourth Motion to Vacate). Although the fourth motion to vacate raised various grounds for relief,[15] the gravamen of the

---

[15] Petitioner argued (1) that he was denied the right to challenge "illegal forfeiture of property seized during search warrants"; (2) that the "D.A. Office and Sherriff Office refuse to return property or initiate a Forfeiture hearing in violation of both state and federal law"; (3) that he was exposed to tuberculosis, ear infections and other ailments on account of a prison employee "placing toxic substance in [Petitioner's] food on Nov. 1999" and subsequently denied treatment; (4) that he was held in administrative segregation from March 20, 2000 through August 2, 2000, and that he therefore was "denied meaningful and adequate access to legal
[footnote continued on following page]

15

motion was (1) that Petitioner had been subjected to cruel and unusual punishment, (2) that

Petitioner had been denied civil and human rights during his prison sentence, and (3) that newly-

discovered DNA test results differ from evidence offered at trial.  Id.  In an order dated

November 29, 2005, the trial court denied Petitioner's motion on the merits.  Ex. MMM

(November 29, 2005 Order).  On January 3, 2006, Petitioner applied for leave to appeal, which

the Appellate Division denied on April 5, 2006.  Ex. PPP (April 5, 2006 Order).

### 2.   **Federal Court Proceedings**

#### a.   *First Habeas Petition – November 4, 1999*

On November 4, 1999, while his first direct appeal and CPL § 330.30 motion were still

pending, Petitioner filed his first habeas petition in the United States District Court of the

Southern District of New York (the "First Petition").  In the First Petition, Petitioner asserted

---

[footnote continued from previous page]

material/books to challenge this Court's Judgment and Sentence"; (5) that his "Human and Civil
Rights were denied"; (6) that he is being held pursuant to a sentence not imposed by the court;
(7) that Petitioner "had a second DNA testing performed," and that the prosecution's use of
different DNA evidence at trial amounted to a denial of due process; (8) that "a Blood Type
other than Victim and Petitioner was obtained by D.A. Office and suppressed" in violation of
Petitioner's due process rights; and (9) that his sentence was improper.  Ex. JJJ (Fourth Motion
to Vacate).

nineteen (19) separate grounds for relief.[16]  By order dated March 2, 2000, Hon. Charles L.

Brieant, U.S.D.J., dismissed the petition on exhaustion grounds.

### b.    *Second Habeas Petition – May 19, 2006*

Following the New York Court of Appeals' April 5, 2006 denial of leave to review

Petitioner's fourth motion to vacate, Petitioner filed the instant habeas petition in this Court on

May 19, 2006 (the "Petition").[17]  In the Petition, Petitioner asserts fifteen (15) separate grounds

for relief:

   (1)    that he was denied his Sixth Amendment right to counsel based upon "deliberate
          interference" with Petitioner's right to consult with counsel;

   (2)    that the trial court improperly refused to permit Petitioner to subpoena material
          witnesses;

   (3)    that the prosecution committed various <u>Brady</u> violations;

   (4)    that he was denied due process based upon the trial court's bias;

   (5)    that he was denied access to legal assistance while his case was pending;

---

[16] The grounds asserted in the first petition were:  (1) that Petitioner was convicted upon a
coerced confession, (2) unlawful search and seizure of evidence, (3) violations of Petitioner's
right against self-incrimination, (4) prosecutorial misconduct stemming from failure to produce
exculpatory evidence, (5) court and prosecutorial interference with Petitioner's right to consult
with counsel, (6) "defective grand jury proceeding," (7) ineffective assistance of trial counsel,
(8) failure to preserve exculpatory evidence, (9) denial of Petitioner's right to call witnesses in
his favor, (10) improper <u>Frye</u> hearing, (11) prosecution mislead Petitioner regarding the
introduction of certain evidence, (12) prosecutor "used his office" to prevent Petitioner from
preparing a defense, (13) denial of right to appeal the conviction, (14) conviction based upon
"irreparably suggestive pre-trial identification" procedures, (15) ineffective assistance of
appellate counsel, (16) jurisdictionally defective indictment, (17) trial court "impermissibly
amended a count" of the indictment, (18) prosecutorial "fraud" against the court, and (19)
jurisdictionally defective indictment (duplicating claim 16).  <u>McFadden v. Kuhlmann</u>, 99-cv-
11804 (CLB).

[17] As noted above, n. 2, <u>supra</u>, "Petition" here refers collectively to the variously-named
documents Petitioner submitted to the court in 2006.  Docket ## 1, 2, 58.

(6)     that he was denied First, Fourth, Sixth, and Fourteenth Amendment rights in connection with his defense at trial and on appeal due to transfers that occurred while he was in custody;

(7)     that he was denied the right to file an appeal of his sentence due to "official obstruction" at the correctional facility at which he was being held;

(8)     that exculpatory evidence demonstrates his actual innocence;

(9)     that the trial court improperly conducted a Frye hearing mid-trial;

(10)    that he was denied the right to testify before the grand jury;

(11)    that he was convicted upon a coerced confession obtained through denial of Petitioner's right to counsel, police brutality, and by the "ruse" of police misrepresentation that petitioner was being detained on a parole violation, rather than the crimes for which he was ultimately charged;

(12)    that he was convicted as a result of evidence obtained through an unlawful search and seizure;

(13)    that he was convicted in violation of his right against self-incrimination;

(14)    that his conviction was obtained through the use of "irreparably suggestive" pre-trial identification procedures; and

(15)    that the trial court improperly rejected Petitioner's 1999 CPL § 330.30 motion as procedurally barred.

Respondent filed a response to the Petition on or around October 9, 2007, arguing (1) that the Petition is time-barred under the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA"); (2) that the Petition is procedurally barred; and (3) that, in any event, each of the grounds set forth in the Petition fails on the merits.  Docket # 10 (Opposition Memorandum ("Opp'n Memo.")).[18]  On December 4, 2007, Petitioner filed three documents – letter brief to Hon. Mark D. Fox, U.S.M.J., dated December 4, 2007, a "Petitioner's Verified

---

[18] Although Respondent filed its opposition memorandum on October 9, 2007, it was docketed on June 27, 2008.

Letter-Reply Memorandum of Law," and an "Affidavit of Exhibits Relevant to Disputed Facts"
– which were collectively docked as Petitioner's reply.  Docket # 8.

### III.   DISCUSSION

#### A.   Applicable Law

"Habeas review is an extraordinary remedy." Bousley v. United States, 523 U.S. 614,
621 (1998) (citing Reed v. Farley, 512 U.S. 339, 354 (1994)).  Before a federal district court may
review the merits of a state criminal judgment in a habeas corpus action, the court must first
determine whether the petitioner has complied with the procedural requirements set forth in 28
U.S.C. §§ 2244 and 2254.  If there has been procedural compliance with these statutes, the court
must then determine the appropriate standard of review applicable to the petitioner's claim(s) in
accordance with  § 2254(d).  The procedural and substantive standards applicable to habeas
review, which were substantially modified by the Anti-Terrorism and Effective Death Penalty
Act of 1996 ("AEDPA"), are summarized below.

#### 1.   *Timeliness Requirement*

A federal habeas corpus petition is subject to AEDPA's strict, one-year statute of
limitations.  See 28 U.S.C. § 2244(d).  The statute provides four different potential starting
points for the limitations period, and specifies that the latest of these shall apply.  See id. §
2244(d)(1).  Under the statute, the limitation period is tolled only during the pendency of a
properly filed application for State post-conviction relief, or other collateral review, with respect
to the judgment to be challenged by the petition.  See id. § 2244(d)(2).  The statute reads as
follows:

19

(d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of –

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(d)(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

The one-year limitation period is subject to equitable tolling, which is warranted when a petitioner has shown "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way' and prevented timely filing." Holland v. Florida, 130 S. Ct. 2549, 2262 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)).  In the Second Circuit, equitable tolling is confined to "rare and exceptional circumstance[s]," Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000) (per curiam) (internal quotation omitted), which have "prevented [the petitioner] from filing his petition on time." Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000) (internal quotation marks and emphasis omitted).  The applicant for equitable tolling must "demonstrate a causal relationship between the extraordinary circumstances on

20

which the claim for equitable tolling rests and the lateness of his filing – a demonstration that

cannot be made if the petitioner, acting with reasonable diligence, could have filed on time

notwithstanding the extraordinary circumstances." Valverde, 224 F.3d at 134.

### 2.    *Exhaustion Requirement*

A federal court may not grant habeas relief unless the petitioner has first exhausted his

claims in state court.  O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); see 28 U.S.C. §

2254(b)(1) ("[a]n application for a writ of habeas corpus on behalf of a person in custody

pursuant to the judgment of a State court shall not be granted unless it appears that – (A) the

applicant has exhausted the remedies available in the courts of the State; or (B)(i) there is an

absence of available corrective process; or (ii) circumstances exist that render such process

ineffective to protect the rights of the applicant"); id. § 2254(c) (the petitioner "shall not be

deemed to have exhausted the remedies available in the courts of the State . . . if he has the right

under the law of the State to raise, by any available procedure, the question presented").  The

exhaustion requirement promotes interests in comity and federalism by demanding that state

courts have the first opportunity to decide a petitioner's claims.  Rose v. Lundy, 455 U.S. 509,

518-19 (1982).

To exhaust a federal claim, the petitioner must have "fairly present[ed] his claim in each

appropriate state court (including a state supreme court with powers of discretionary review),

thereby alerting that court to the federal nature of the claim," and thus "giving the State the

opportunity to pass upon and correct alleged violations of its prisoners' federal rights."  Baldwin

v. Reese, 541 U.S. 27, 29 (2004) (internal quotation marks and citations omitted).  "Because

non-constitutional claims are not cognizable in federal habeas corpus proceedings, a habeas

petition must put state courts on notice that they are to decide federal constitutional claims."

Petrucelli v. Coombe, 735 F.2d 684, 687 (2d Cir. 1984) (citing Smith v. Phillips, 455 U.S. 209,

221 (1982)).  Such notice requires that the petitioner "apprise the highest state court of both the

factual and legal premises of the federal claims ultimately asserted in the habeas petition."

Galdamez v. Keane, 394 F.3d 68, 73 (2d Cir. 2005) (internal citation omitted).  A claim may be

"fairly presented" to the state courts therefore, even if the petitioner has not cited "chapter and

verse of the Constitution," in one of several ways:

> (a) [R]eliance on pertinent federal cases employing constitutional analysis, (b)
> reliance on state cases employing constitutional analysis in like fact situations, (c)
> assertion of the claim in terms so particular as to call to mind a specific right
> protected by the Constitution, and (d) allegation of a pattern of facts that is well
> within the mainstream of constitutional litigation.

Daye v. Attorney Gen. of State of N.Y., 696 F.2d 186, 194 (2d Cir. 1982).  A habeas petitioner

who fails to meet a state's requirements to exhaust a claim will be barred from asserting that

claim in federal court, absent a showing of cause and prejudice, or a fundamental miscarriage of

justice.  Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

However, "[f]or exhaustion purposes, a federal habeas court need not require that a

federal claim be presented to a state court if it is clear that the state court would hold the claim

procedurally barred."  Reyes v. Keane, 118 F.3d 136, 139 (2d Cir. 1997) (internal quotation

omitted).  "In such a case, a petitioner no longer has 'remedies available in the courts of the

State' within the meaning of 28 U.S.C. § 2254(b)."  Grey v. Hoke, 933 F.2d 117, 120 (2d Cir.

1991).  Such a procedurally barred claim may be deemed exhausted by a federal habeas court.

See, e.g., Reyes, 118 F.3d at 139.  However, absent a showing of either "cause for the procedural

default and prejudice attributable thereto," Harris v. Reed, 489 U.S. 255, 262 (1989), or "actual

22

innocence," Schlup v. Delo, 513 U.S. 298 (1995)), the petitioner's claim will remain unreviewable by a federal court.

Finally, notwithstanding the procedure described above, a federal court may yet exercise its discretion to review and deny a mixed petition containing both exhausted and unexhausted claims, if those unexhausted claims are "plainly meritless." Rhines v. Weber, 544 U.S. 269, 277 (2005); see 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); Padilla v. Keane, 331 F. Supp.2d 209, 216 (S.D.N.Y. 2004) (interests in judicial economy warrant the dismissal of meritless, unexhausted claims).

### 3.   *Procedural Default*

Even where an exhausted and timely habeas claim is raised, comity and federalism demand that a federal court abstain from its review when the last-reasoned state court opinion to address the claim relied upon "an adequate and independent finding of a procedural default" to deny it. Harris, 489 U.S. at 262; see also Coleman v. Thompson, 501 U.S. 722, 730 (1991); Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991); Levine v. Comm'r of Corr. Servs., 44 F.3d 121, 126 (2d Cir. 1995).

A state court decision will be "independent" when it "'fairly appears" to rest primarily on state law. Jimenez v. Walker, 458 F.3d 130, 138 (2d Cir. 2006) (citing Colman, 501 U.S. at 740). A decision will be "adequate" if it is "'firmly established and regularly followed' by the state in question." Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999) (quoting Ford v. Georgia, 498 U.S. 411, 423-24 (1991)).

23

### 4.    *AEDPA Standard of Review*

Before a federal court can determine whether a petitioner is entitled to federal habeas

relief, the court must determine the proper standard of review under AEDPA for each of the

petitioner's claims. 28 U.S.C. § 2254(d)(1)-(2). This statute "modifie[d] the role of federal

habeas corpus courts in reviewing petitions filed by state prisoners," and imposed a more

exacting standard of review. Williams v. Taylor, 529 U.S. 362, 402 (2000). For petitions filed

after AEDPA became effective, federal courts must apply the following standard to cases in

which the state court adjudicated on the merits of the claim:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant
> to the judgment of a State court shall not be granted with respect to any claim that
> was adjudicated on the merits in State court proceedings unless the adjudication of
> the claim –
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable
>> application of, clearly established Federal law, as determined by the
>> Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination
>> of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). The deferential AEDPA standard of review will be triggered when

the state court has both adjudicated the federal claim "on the merits," and reduced its disposition

to judgment. Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001).

Under the first prong, a state court decision is contrary to federal law only if it "arrives at

a conclusion opposite to that reached by the [the Supreme Court] on a question of law or if [it]

decides a case differently than [the Supreme Court] on a set of materially indistinguishable

facts." Williams, 529 U.S. at 413. A decision involves an "unreasonable application" of

Supreme Court precedent if the state court "identifies the correct governing legal rule from the

Supreme Court cases but unreasonably applies it to the facts of the particular state prisoner's case," or if it "either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407.

Under the second prong of AEDPA, the factual findings of state courts are presumed to be correct. 28 U.S.C. § 2254(e)(1); see Nelson v. Walker, 121 F.3d 828, 833 (2d Cir. 1997). The petitioner must rebut this presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

**B.**      **The Petition is Timely**

Respondent first argues that the Petition is time-barred under the AEDPA. Specifically, Respondent asserts that "the direct state appeals process ended on January 10, 2000, when a judge of the Court of Appeals denied petitioner's application for leave to appeal," meaning that the statute of limitations began to run ninety (90) days later, on April 10, 2000. Opp'n Memo., at 18. Thus, even when taking into account tolling periods that may apply under the AEDPA in connection with Petitioner's various post-trial motions filed between 2000 and 2005, Respondent argues that the Petition is nevertheless time-barred. Id. at 18-21.

Alternatively, Respondent argues that "[e]ven if this Court were to find that petitioner's conviction was 'reset' and became 'final' on October 14, 2004, (ninety days after the New York Court of Appeals denied leave to appeal from the amended sentence on July 14, 2004), the instant petition is still time barred because petitioner waited more than eighteen months to file his habeas petition." Id. at 22. According to Respondent, Petitioner's fourth motion to vacate, filed on June 29, 2005 and finally resolved on April 5, 2006, did not toll the statute of limitations

25

because it was "improperly filed." Id. at 22-23.  In making this argument, Respondent implicitly

concedes that if Petitioner's fourth motion to vacate was properly filed, and thereby did toll the

statute of limitations, then the instant Petition would be timely filed under the AEDPA. Id.

    The Court finds the Petition to be timely.  First, by filing his fourth motion to vacate,

Petitioner tolled the statute of limitations.  As the United States Supreme Court has explained:

> [A]n application is "properly filed" when its delivery and acceptance are in
> compliance with the applicable laws and rules governing filings. These usually
> prescribe, for example, the form of the document, the time limits upon its
> delivery, the court and office in which it must be lodged, and the requisite filing
> fee.  But in common usage, the question whether an application has been
> "properly filed" is quite separate from the question whether the claims contained
> in the application are meritorious and free of procedural bar.

Artuz v. Bennett, 531 U.S. 4, 8-9 (2000) (internal citations omitted).  Here, although Respondent

claims that Petitioner's fourth motion to vacate was "frivolous," "unsubstantiated," and "not

cognizable in either a CPL 440.10 or 440.20 motion," Respondent does not question the form of

the motion, Petitioner's compliance with time limits applicable to filing of the motion, the court

and office in which Petitioner filed the motion, or Petitioner's payment of applicable filing fees.

In other words, although Respondent attacks the *merits* of Petitioner's fourth motion to vacate,

these arguments do not address whether the motion was properly filed.  Since the trial court

reached the merits of Petitioner's fourth motion to vacate, Ex. MMM (November 29, 2005

Order), this Court must conclude that it was properly filed and therefore tolled the statute of

limitations from June 29, 2005 (when the motion was filed) through April 5, 2006 (when the

motion was finally resolved).

    Second, the statute of limitations did not begin to run until Petitioner's re-sentencing

became final on October 14, 2004.  Indeed, it is now well-settled that "[f]inal judgment in a

26