UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #:                           │
│ DATE FILED:                      │
└─────────────────────────────────┘
```

REGINALD G. McFADDEN,

                Petitioner,

v.

GEORGE PATAKI et al.,

                Respondents.

Case No. 06-CV-13330 (KMK) (PED)

ORDER ADOPTING R&R AND
ADDRESSING PETITIONER'S
OBJECTIONS THERETO

KENNETH M. KARAS, District Judge:

On March 5, 2013, this Court issued an Order adopting Magistrate Judge Davison's Report & Recommendation ("R&R") and denying Petitioner's request for habeas relief. (*See* Dkt. No. 62 ("Order").) Petitioner apparently had submitted timely objections to the R&R, but, through no fault of Petitioner's, the Court failed to consider them in its Order. (*See id*.) The Court apologizes to Petitioner for this oversight. Petitioner, who had filed an appeal of the Order, (Dkt. No. 64), made the Court aware of its error and submitted a motion to reconsider pursuant to Federal Rule of Civil Procedure 60(b). (Dkt. No. 67.) The Court requested the case be remanded so that the March 5, 2013 Order and Judgment could be vacated and replaced with an order that fully addresses Petitioner's objections to the R&R. (Dkt. No. 68.) The Court of Appeals remanded the case as requested. (Dkt. No. 71.) The Court now vacates its prior Order, and, having reviewed Petitioner's Motion, his accompanying Memorandum containing Petitioner's objections to the R&R and additional supporting documents, the Record, and Magistrate Judge Davison's R&R, hereby denies Petitioner's request for habeas relief for the reasons described in the R&R and herein.

## I. BACKGROUND

A. Factual Background

The Court assumes the Parties' familiarity with the factual and procedural history of the case, as described in Judge Davison's thorough R&R. (*See* R&R (Dkt. No. 59).) In short, the evidence at trial established that Petitioner attacked a South Nyack woman, held her captive, and repeatedly raped her. Petitioner also forced the victim to accompany him to ATMs to withdraw money from her bank account. When Petitioner was arrested, more than two weeks later, he admitted to beating and raping the victim and taking her cash and jewelry. Forensic testing matched Petitioner's DNA with that collected in a rape kit performed on the victim.

On September 7, 1995, in New York State Supreme Court, Rockland County, Petitioner was convicted of three counts of rape in the first degree (New York Penal Law § 130.35(1)), one count of burglary in the first degree (New York Penal Law § 140.30(2)), one count of robbery in the first degree (New York Penal Law § 160.15(1)), one count of aggravated sexual abuse in the first degree (New York Penal Law § 130.70(1)(a)), one count of assault in the second degree (New York Penal Law § 120.05(1)), and one count of grand larceny in the fourth degree (New York Penal Law § 155.30(1)). Petitioner was sentenced to consecutive indeterminate terms of 12-and-one-half to 25 years in state prison on the three first-degree-rape counts, which terms run concurrently with an indeterminate term of two to four years on the fourth-degree-grand-larceny count and another concurrent term of three to six years on the second-degree-assault count. In total, his indeterminate sentence is to run from 37-and-one-half to 75 years. (*See* Resp'ts' Ex. YY at 3.)[1]

---

[1] On May 27, 1999, on remand from the Appellate Division, the trial court clarified the sentence, but its substance was not altered. (*See* Resp'ts' Ex. YY at 9.)

2

B. Procedural Background

Since his conviction, Petitioner has filed multiple state and federal court appeals and

petitions. Magistrate Judge Davison's R&R contains a comprehensive catalogue of Petitioner's

filings and the claims raised therein. (R&R 8–19.) Several of these filings are noteworthy for

purposes of the Court's instant Order. Petitioner filed his first direct appeal in the Appellate

Division of New York Supreme Court on April 28, 1998. (Resp'ts' Ex. L (Appellant's Brief).)

The Appellate Division affirmed Petitioner's conviction and most aspects of his sentence, but

remanded the case to the trial court for clarification of Petitioner's sentence, given that a

kidnaping charge merged with other charges against Petitioner. *People v. McFadden*, 692

N.Y.S.2d 393 (App. Div. 1999). After the trial court clarified the terms of Petitioner's sentence,

Petitioner filed a motion for an extension of time to file for leave to appeal with the Court of

Appeals for New York State. (Resp'ts' Ex. V (Leave Application).) In this Application, filed

August 12, 1999, Petitioner's counsel failed to specify the issues for which Petitioner was

seeking appellate review. *Id.* The Court of Appeals granted Petitioner's application, but, when

the court had not received any additional materials clarifying Petitioner's grounds for appeal by

January 10, 2000, the court denied leave to appeal. *People v. McFadden*, 726 N.E.2d 491 (N.Y.

2000).

On November 4, 1999, Petitioner filed his first federal habeas petition, which was

dismissed on exhaustion grounds. Petitioner filed the instant habeas petition and supporting

documents on November 20, 2006, (Dkt. Nos. 1, 2, 58), to which Respondents responded on

October 9, 2007 (Dkt. No. 10). Petitioner replied to Respondents' submission on December 7,

2007. (Dkt. No. 8.) Magistrate Judge Davison issued his R&R on April 6, 2011. (Dkt No. 59.)

On March 5, 2013, the Court entered an Order adopting Magistrate Judge Davison's R&R,

denying the Petition and entering judgment for Respondents. (Dkt. Nos. 62, 63.) Petitioner then

appealed the judgment to the Court of Appeals for the Second Circuit, (Dkt. No. 64), and, shortly

thereafter, the Court of Appeals received the Notice and docketed the appeal.

On April 3, 2013, Petitioner filed a Motion for Reconsideration under Federal Rule of

Civil Procedure 60(b), requesting that the Court reconsider its judgment and attaching its

previously submitted objections to the R&R. (*See* Mot. for Reconsideration, Rule 60(b) FRCP

(Dkt. No. 67).) Based on these submissions, the Court issued an Order explaining that it had not

considered Petitioner's objections to the R&R and requesting that the Court of Appeals remand

Petitioner's case so that the Court could vacate its March 5, 2013 Order and replace it with an

order fully addressing Petitioner's objections to the R&R. (Dkt. No. 68.) On May 8, 2013, the

Court of Appeals remanded the case for this purpose. (Dkt. No. 71.) Petitioner subsequently

provided a supporting affidavit and an additional letter to the Court, in which he has expounded

on his R&R objections. (Dkt. No. 73.)

## II. DISCUSSION

### A. Legal Standard

A district court reviewing a report and recommendation addressing a dispositive motion

"may accept, reject, or modify, in whole or in part, the findings or recommendations made by the

magistrate judge." 28 U.S.C. § 636(b)(1). Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule

of Civil Procedure 72(b), a party may submit objections to the magistrate judge's report and

recommendation. These objections must be "specific" and "written," Fed. R. Civ. P. 72(b)(2),

and must be made "[w]ithin 14 days after being served with a copy of the recommended

disposition," *id.*; *see also* 28 U.S.C. § 636(b)(1), plus an additional three days when service is

4

made pursuant to Federal Rules of Civil Procedure 5(b)(2)(C)–(F), *see* Fed. R. Civ. P. 6(d), for a total of seventeen days, *see* Fed. R. Civ. P. 6(a)(2).

Where a party submits timely objections to a report and recommendation, the district court reviews *de novo* the parts of the report and recommendation to which the party objected. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). The district court "may adopt those portions of the . . . report [and recommendation] to which 'no specific written objection' is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law." *Eisenberg v. New England Motor Freight, Inc.*, 564 F. Supp. 2d 224, 226 (S.D.N.Y. 2008) (quoting Fed. R. Civ. P. 72(b)(2)).

B. Analysis

1. Petitioner's Objections to the Report & Recommendation

As an initial matter, the Court agrees with Magistrate Judge Davison that deciphering Petitioner's submissions in this Action is difficult. Rather than use the form provided for pro se habeas petitioners, pursuant to the Rules Governing Section 2254 Cases—or even follow its general contours—Petitioner submitted nearly 400 pages of written arguments, exclusive of exhibits, which contain "a series of prolix, rambling and repetitive pleadings . . . notable for their lack of structure, inconsistent pagination and [confusing] paragraph enumeration." (*See* R&R 2–4 & n.3.) These filings include excerpts of exhibits that are unmarked or incomplete, as well as strings of unconnected quotations from a variety of legal sources, precisely what Rule 2 of the Rules Governing Section 2254 Cases seeks to prevent. *See* Rules Governing Section 2254 Cases in the United States District Courts, Rule 2, Advisory Committee Notes (explaining that Rule 2 was drafted because, before the rule, "lengthy and often illegible petitions, arranged in no logical order, were submitted to judges who have had to spend hours deciphering them."). All this

5

being said, Magistrate Judge Davison's R&R is comprehensive and does an admirable job of discerning any plausible claims contained in Petitioner's voluminous filings and construing Petitioner's submissions as conveying the strongest arguments possible.

Petitioner's objections to Magistrate Judge Davison's R&R are voiced in several documents, including a typewritten document titled "Petitioner's Objections to Report & Recommendation" ("Pet'r's Obj. to R&R"), and a handwritten "Affidavit in Support of Rule 60(b) Motion," dated March 17, 2013, in which Petitioner explicates his objections to the R&R. (Dkt. No 67.) Petitioner also submitted a handwritten letter, dated October 29, 2013, containing more allegations that he requested the Court consider. (Dkt. No. 73.) While Petitioner's letter and affidavit are arguably untimely, and though they present the same challenges to interpretation as Petitioner's other submissions, the Court will consider the information in all of these submissions in keeping with the special solicitude afforded to pro se litigants. *See Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010) ("[A] court is ordinally obligated to afford a special solicitude to *pro se* litigants" because such litigants "generally lack[] both legal training and experience"). The Court has undertaken a careful review of all of Petitioner's submissions that postdate the R&R. Construing these submissions liberally, and interpreting them to raise the strongest arguments that they suggest, *see Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006), the Court finds Petitioner's objections to consist of assertions that the R&R did not properly consider:

> (1) that Petitioner's lawyer allowed suggestive police-assisted identification because of an alleged conflict of interest;
>
> (2) that Justice Kelly's law clerk failed to accept exhibits provided to the court in connection with Petitioner's C.P.L. § 440 motion, also because of an alleged conflict of interest;

6

> (3) that the prosecution delayed and/or denied Petitioner access to certain *Rosario* and *Brady* discovery materials;
>
> (4) that Petitioner was denied side-bar conferences by the trial court; and
>
> (5) that Petitioner was convicted as a result of evidence obtained through an unlawful search and seizure.

As an initial matter, the Court does not agree with Petitioner's insinuation that the R&R failed to address the issues that form the basis for his objections.[2] Magistrate Judge Davison's R&R considers all of the points Petitioner appears to be making in his objections, finding three of them to be procedurally barred, another to be unexhausted but procedurally barred, and the last to be exhausted but not meriting habeas relief. Nonetheless, the Court will consider the issues raised in Petitioner's objections de novo, as required by federal law. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). With respect to the claims that Petitioner did not raise in his objections—specifically claims 2, 6–11, 13, and 15 as identified in Magistrate Judge Davison's R&R, (R&R 17–18)—the Court has reviewed the R&R under the clear error standard. The Court finds no clear error in the R&R and therefore adopts its conclusions with respect to these claims. The Court notes, moreover, that it would adopt Magistrate Judge Davison's recommendations even under a de novo review. The Court now turns to the claims referred to by Petitioner in his objections to the R&R.

---

[2] Petitioner's submission presents the question: "WHY YOU SHOULD REJECT THIS REPORT AND RECOMMENDATION?" and explains, "[t]he answer is; not so much what it says, but what it failed to say[]," before listing Petitioner's objections. (Pet'r's Obj. to R&R 1.)

## 2. Analysis of Petitioner's Objections Under ADEPA

### a. Three of Petitioner's Objections Concern Procedurally-Barred Claims

Magistrate Judge Davison concluded that several of Petitioner's claims are procedurally barred from federal habeas review because they were not "fairly presented" to the New York Court of Appeals as required by ADEPA. (*See* R&R 17–18 (listing Petitioner's claims 3, 12, and 14, which track Petitioner's third, fifth, and first objections to the R&R, respectively).)

As noted above, after the Appellate Division largely affirmed 's conviction (with the aforementioned sentence modification), Petitioner subsequently filed a motion with the New York Court of Appeals, seeking an extension of time to seek leave to appeal due to the difficulties and delays in attorney–client communication presented by Petitioner's incarceration. (*See* Resp'ts' Ex. V.) The submission to the Court of Appeals did not contain any mention of the specific issues for which Petitioner sought appellate review, nor did it set forth any facts from which these issues might be inferred. (*Id.*) Instead, Petitioner's application stated only that "the issues *to be presented* are the denial of petitioner's right to a fair trial under the New York and United States Constitutions and Laws." (*Id.* (emphasis added).) This application was granted, and Petitioner was provided with an extension of time to file, along with a specific warning to provide "[p]articular written attention . . . to identifying *reviewability* and *preservation* issues" per N.Y. Court Rule 500.20(a). (Resp'ts' Ex. X (emphasis added).) *See* N.Y. Comp. Codes R. of Regs. tit. 22, § 500.20(a)(2).[3] However, Petitioner failed to provide any further information to the Court of Appeals regarding the legal issues he believed merited further appellate review. On January 10, 2012, having received nothing more substantive than Petitioner's original request,

---

[3] This section was formerly codified at 500.10(a). For purposes of clarity and consistency, the Court will reference this section as 500.20(a).

8

the Court of Appeals denied leave to appeal. (Resp'ts' Ex. Y (Jan. 10, 2000 Order) (denying leave on grounds that "there is no question of law presented which ought to be reviewed by the Court of Appeals").)

Based on this record, the Court finds that Petitioner failed to fairly present the claims considered by the Appellate Division to the Court of Appeals for review, as he was required to do to obtain the requested relief. *See Aparicio v. Artuz*, 269 F.3d 78, 89–90 (2d. Cir. 2001) ("[P]etitioner must present the substance of the same federal constitutional claim[s] that he now urges upon the federal courts to the highest court in the pertinent state." (citations and internal quotation marks omitted) (second alteration in origional)); *Chebere v. Phillips*, No. 04-CV-296, 2013 WL 5273796, at *19 (S.D.N.Y. Sept. 18, 2013) (noting that "the exhaustion requirement is fulfilled when [a petitioner's] claims have been presented to the highest court of the pertinent state" (internal quotation marks omitted)); *see also Smith v. Duncan*, 411 F.3d 340, 345 (2d Cir. 2005) (finding the petitioner's claim to be procedurally defaulted where he failed to raise the claim in a letter to the New York Court of Appeals); *Alexander v. Connell*, No. 10-CV-6658, 2012 WL 3249415, at *7 (S.D.N.Y. Aug. 3, 2012) (holding two of the petitioner's claims to be unexhausted because petitioner failed to fairly present those claims to the Court of Appeals, where the petitioner "failed to raise these claims in federal terms, neither citing federal authority nor calling on constitutional analyses embedded in state law or conventional constitutional terminology"). Here, while Petitioner's Appellate Division submissions refer to arguments that track claims 3, 12, and 14, Petitioner filed no substantive submission asserting these claims—nor even a reference to his Appellate Division submission—in the application for leave to appeal submitted to the Court of Appeals. Under New York's procedural rules, Petitioner may not apply again for leave to appeal to the Court of Appeals, *see* N.Y. Comp. Codes. R. of Regs. tit.

9

22, § 500.20(a)(2), nor may Petitioner seek collateral review of the arguments raised in his

Appellate Division briefing, as these arguments have either been raised, or could have been

raised, on direct appeal, *see* N.Y. Crim. Proc. Law §§ 440.10(2), 440.20(2); *St. Helen v.

Senkowski*, 374 F.3d 181, 183 (2d Cir. 2004) (holding that the petitioner had "procedurally

defaulted on his . . . claim because New York's procedural rules now bar him from raising it in

New York Courts" where "direct review by the Court of Appeals [was] no longer available" due

to New York Court Rules, "and the failure to have raised the claim on direct review now

forecloses further collateral review in state court" pursuant to N.Y. Crim. Proc. Law

§ 440.10(2)(c)).

  "In the case of procedural default (including where an unexhausted claim no longer can

proceed in state court), [the Court] may reach the merits of the claim 'only if the defendant can

first demonstrate either cause and actual prejudice, or that he is actually innocent.'" *St. Helen*,

374 F.3d at 184 (quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998)); *see also Clark v.

Perez*, 510 F.3d 382, 393 (2d Cir. 2008) ("Where a defendant has procedurally defaulted a claim

by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can

first demonstrate either cause and actual prejudice, or that he is actually innocent" (internal

quotation marks omitted)). Petitioner has not met this standard.

  To begin, Petitioner has failed to demonstrate cause for his procedural default. "Cause"

exists if the petitioner "can show that some objective factor external to the defense impeded

counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478,

488 (1986). Here, Petitioner offered no explanation for his failure to timely raise specific issues

for consideration by the Court of Appeals, as required by N.Y. Court Rule § 500.20, other than

to place blame on his counsel. (*See* Pet'r's Mem. of Law 69 (Dkt. No. 2) ("[Petitioner's counsel]

did not even seek a leave to appeal from [the May 3, 1999 Appellate Division] decision in a timely manner or raise appropriate issues of law for review.").) Petitioner has not suggested any "objective factor external to the defense" that would have prevented Petitioner or his attorney from making such a filing. In fact, the Court of Appeals permitted Petitioner to seek leave to appeal, despite the fact that Petitioner's request was more than two months past the applicable filing deadline. In doing so, the Court of Appeals explicitly referenced Petitioner's obligation to comply with the rule codified at N.Y. Court Rule § 500.20. (*See* Resp'ts' Ex. X.) Despite having three weeks after the court's September 9, 1999 Order in which to provide the court with additional materials, (*id.*), Petitioner and his counsel failed to do so. Based on this record, the Court cannot conclude that an "objective factor external to the defense" hindered Petitioner's efforts to comply with New York's procedural rules.

To the extent that Petitioner suggests his failure to timely file his appeal is a result of ineffective assistance of counsel, this, too, fails to suffice as cause for procedural default. "[B]ecause there is no basic right to the assistance of counsel in the pursuit of appeals beyond first-tier ones, there is no corresponding right to the effective assistance of counsel for such appeals." *Pena v. United States*, 534 F.3d 92, 95 (2d Cir. 2008). Furthermore, "ineffective assistance of appellate counsel claims cannot constitute cause for procedural default unless first presented in state court as an independent constitutional claim." *DiSimone v. Phillips*, 461 F.3d 181, 191 (2d Cir. 2006) (internal quotation marks omitted) (citing *Edwards v. Carpenter*, 529 U.S. 446, 451–52 (2000)). In addition to Petitioner's other post-conviction filings, he filed two coram nobis applications in state court, but never asserted an ineffective-assistance claim for failure of his counsel to comply with N.Y. Court Rule § 500.20, despite raising other ineffective-assistance claims in these applications. (*See* Resp'ts' Ex. GG (First Coram Nobis Application)

11

(protesting that Petitioner's counsel failed to raise the issues suggested by Petitioner, who filed pro se supplemental appellate briefing); *id.* Ex. FFF (Second Coram Nobis Application) (citing appellate counsel's "lack of skill in criminal case laws" and alleged ineffectiveness).) Therefore, because Petitioner has not asserted an ineffective-assistance-of-counsel claim in connection with his August 1999 application for leave to appeal before the Court of Appeals, Petitioner is barred from establishing cause on this basis for habeas purposes.

In "extraordinary case[s]," a court may review a procedurally defaulted habeas claim in order to avoid a "fundamental miscarriage of justice." *Schlup v. Delo*, 513 U.S. 298, 321 (1995); *see also Doe v. Menefee*, 391 F.3d 147, 161 (2d Cir. 2004) (explaining that in "extremely rare" cases, "a petitioner may use his claim of actual innocence as a 'gateway,' or a means of excusing his procedural default, that enables him to obtain review of his constitutional challenges to his conviction"). However, this exception is expressly limited to situations where a petitioner presents a claim of actual innocence. *See Schlup*, 513 U.S. at 321 (noting that this exception is "explicitly tied" to the petitioner's innocence). "[A] claim of actual innocence must be both credible and compelling. For the claim to be credible, it must be supported by new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial. For the claim to be compelling, the petitioner must demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt . . . ." *Rivas v. Fischer*, 687 F.3d 514, 541 (2d Cir. 2012) (internal quotation marks and citations omitted). Here, Petitioner offers no new reliable evidence of his innocence in his objections to the R&R. In fact, the only point Petitioner makes in support of his innocence is the allegation that a witness statement placed Petitioner "over 70 miles" away from the crime on the date in question—a point raised by

12

Petitioner in his supplemental pro se appellate brief. (*Compare* Pet'r's Obj. to R&R 3, *with* Resp'ts' Ex. R at 50.) Moreover, Petitioner fails to assert new reliable evidence of his actual innocence in his habeas submission. Rather, Petitioner re-asserts an argument set forth in his supplemental pro se brief to the Court of Appeals, claiming that DNA that does not match Petitioner was extracted from a blanket recovered from the victim's home. (*Compare* Resp'ts' Ex. R at 45, *with* Pet'r's Aff. in Supp. of Constitutional Issues 35.)

Even if both of these pieces of evidence were to be accepted by the Court as "new reliable evidence," the Court still could not conclude that "more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt," *Rivas*, 687 F.3d at 541, especially in light of the overwhelming evidence presented at trial establishing Petitioner's guilt. (*See* Trial Tr. 2369–97.) Among other things, the victim identified Petitioner as her assailant, (*see id.* at 2377–78, 2397), surveillance video appeared to show Petitioner using the victim's ATM card, (*see id.* at 2380–81), and that Petitioner's DNA was found on evidence collected at the victim's home, (*see id.* at 2386). Given the evidence presented at trial, the Court concludes that Petitioner has not demonstrated "actual innocence" that would merit consideration of Petitioner's procedurally barred habeas claims. *Rivas*, 687 F.3d at 541.

Because the claims raised in Petitioner's first, third, and fifth objections to the R&R are exhausted but procedurally barred, and because Petitioner cannot overcome the procedural bar by demonstrating cause or a fundamental miscarriage of justice due to Petitioner's actual innocence, the Court rejects these claims.

13

### b. Petitioner's Bias Objection

Petitioner also objects to the R&R by claiming that, because of a personal conflict of interest, Justice Kelly's law clerk failed to accept exhibits provided to the court in connection with Petitioner's § 440 motion. (Pet'r's Obj. to R&R 3.) The Court notes, yet again, that despite Petitioner's protestations, Magistrate Judge Davison did consider this claim as part of the R&R. (*See* R&R 35–36.) Regardless, the Court will review Petitioner's claim de novo. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

As an initial matter, the record demonstrates that Petitioner's submissions were accepted by the trial court. When Petitioner made his submission in connection with his § 440 motion on August 5, 1996, (Pet'r's Mem. of Law 5), the court had already ruled on Petitioner's motion, (Resp'ts' Ex. D). Rather than deny Petitioner's submissions as untimely, however, Justice Kelly accepted Petitioner's additional exhibits and supporting moving papers and considered them as a motion to reconsider, (Resp'ts' Ex. E (Motion To Reconsider)), which the court also denied, (Resp'ts' Ex. H (Oct. 28, 1996 Order)).

Moreover, Petitioner did not raise his bias claim to the Appellate Division or Court of Appeals, and this claim is therefore unexhausted. *See Aparicio*, 269 F.3d at 89–90. Accordingly, the Court may not consider this claim. *See* 28 U.S.C. § 2254(b)(2); *Sepulveda*, 2013 WL 1248379, at *2. In any event, Petitioner has articulated nothing more than a conclusory allegation of bias against the trial court's law clerk. Indeed, Petitioner has not established that the court's decisionmaking was influenced by bias. The mere allegation of bias without further specifics or support is insufficient grounds for habeas relief. *See Francolino v. Kuhlman*, 365 F.3d 137, 142 (2d Cir. 2004) ("A trial judge's intervention in the conduct of a criminal trial would have to reach a significant extent and be adverse to the defendant to a

14

substantial degree before the risk of either impaired functioning of the jury or lack of the appearance of a neutral judge conducting a fair trial exceeded constitutional limits." (internal quotation marks omitted)); *Mills v. Lempke*, No. 11-CV-440, 2013 WL 435477, at *47 (W.D.N.Y. Feb. 4, 2013) ("In order to prevail on a claim of judicial bias, the petitioner must show that he was denied a trial 'by an unbiased and impartial judge without a direct personal interest in the outcome of the hearing.'" (quoting *Ungar v. Sarafite*, 376 U.S. 575, 584 (1964))). Here, Petitioner has not substantiated any objection to the trial court's conduct as a result of any alleged bias and therefore has insufficiently alleged this claim for habeas relief. *See Copeland v. Walker*, 258 F. Supp. 2d 105, 134 (E.D.N.Y. 2003) ("A mere allegation of judicial bias or prejudice unsupported by references to the record cannot in and of itself establish a federal constitutional violation."); *Francolino v. Kahlman*, 224 F. Supp. 2d 615, 641 (S.D.N.Y. 2002) (rejecting habeas claim alleging bias where petitioner "never explained how [the judge's] alleged bias influenced her rulings, or even directly argue[d] that [the judge's] rulings were unsound."), *aff'd*, 365 F.3d 137 (2d Cir. 2004). The Court therefore rejects Petitioner's claims with respect to Petitioner's second objection as described above.

### c. Petitioner's Sidebar Exclusion Claim Is Rejected on the Merits

Lastly, Petitioner objects to the R&R by claiming that the trial court failed to honor his pro se status and prevented his adequate self-representation by refusing to allow Petitioner to participate in a sidebar conference during the trial.[4] (Pet'r's Aff. in Supp. 2; Pet'r's Mem. of

---

[4] The difficulty in deciphering Petitioner's pro se filings, both in the instant habeas Petition and Petitioner's state-level appeals, presents challenges in determining whether Petitioner's sidebar-related objection was presented to the Court of Appeals. For the purposes of this Opinion, the Court will assume this claim was exhausted, as did Magistrate Judge Davison. (R&R 36.)

15

Law 15, 27, 39.) However, Petitioner's allegation is wholly unsupported by the portions of the

trial transcript that Petitioner cites. (*See* Trial. Tr. 1418–19, 1427–28.) In fact, these portions of

the transcript demonstrate that the trial court asked Petitioner whether his counsel would be

participating in the conference on Petitioner's behalf, and Petitioner assented to this

arrangement. (*Id.* at 1422.) Furthermore, Petitioner provides no evidence that this sidebar

resulted in his loss of control over his trial, and ignores the fact that the conference took place

outside of the presence of the jury, (*id.* at 1418), which prevented the jury from developing the

perception that Petitioner was not representing himself. *See Joyner v. Ercole*, No. 06-CV-486,

2010 WL 4457769, at *13–14 (E.D.N.Y. Apr. 23, 2010) (finding defendant's exclusion from a

sidebar in which his standby counsel and the prosecutor participated was "troubling" because of

the possibility that it "prevented him from maintaining control of the case and destroyed the

jury's perception of his self-representation," but denying petitioner's claim because "neither of

those results occurred"), *adopted by* 2010 WL 4457711 (E.D.N.Y Nov. 1, 2010). Moreover, the

exclusion of Petitioner from a single sidebar conference is not sufficient to amount to a violation

of his constitutional rights. *See United States v. Mills*, 895 F.2d 897, 905 (2d Cir. 1990) (holding

that defendant's rights were not violated, despite his being excluded from a sidebar conference,

because there was "no indication that [defendant] did not control and guide his defense and only

a minuscule risk that the jury did not perceive [defendant's] control"); *Joyner*, 2010 WL

4457711, at *4 (noting that "unsolicited participation by standby counsel does not categorically

violate a defendant's right of self-representation," as long as "the pro se defendant is entitled to

preserve actual control over the case he chooses to present to the jury" and "participation by

standby counsel without the defendant's consent [does not] destroy the jury's perception that the

defendant is representing himself" (internal quotation marks and citation omitted)).

16

Accordingly, the Court rejects Petitioner's habeas claim regarding his alleged exclusion from the
sidebar conference.

### d. Petitioner Has No Grounds To Claim Ineffective Assistance of Counsel

Petitioner also appears to raise an ineffective-assistance claim regarding his counsel's
failure to challenge an allegedly suggestive police-assisted identification of Petitioner. While
the Court finds the R&R's rejection of Petitioner's ineffective-assistance claim to be soundly
considered, Petitioner's claims do merit a brief elaboration. As noted in the R&R, and above,
Petitioner proceeded pro se with standby counsel for the course of the trial, though he also had
more traditional legal assistance at certain points in his case, including at a suppression hearing.
(R&R 39.) What the R&R does not explain at much length—because it need not—is just how
unequivocal Petitioner's request to proceed pro se was, and also how clear it is that counsel was
not deficient at the various points when Petitioner was represented.

During an extended colloquy with the trial judge, Petitioner explained at length his
reasons for proceeding pro se. He stated:

> Well, the defense in—which I was to put forward requires a human side more
> than a legal side. . . . I seek to [appear] pro se for reasons that I—if there is a part
> of my life—there's a part of my existence that—that must be conveyed to the
> jury. . . . I'm not deluded by any blind faith belief in either my innocence or guilt.
> My reasons for this application is not to lay some kind of false foundation, force a
> future appeal for lack of representation. . . . So, my reason for going pro se is
> purely my desire, my choice, to carry my own banner. And if I'm to go back to
> prison, I'd rather go back under my own banner than, perhaps, someone else's.

(Suppression Hr'g Tr. (5/22/1995) 16–17.) It is difficult to imagine a more unequivocal
statement of a defendant's desire to represent himself. This statement and ensuing colloquy
complied fully with the Supreme Court's statement in *Faretta v. California*, 422 U.S. 806
(1975), that while a "defendant need not himself have the skill and experience of a lawyer in

17

order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." *Id.* at 835 (internal quotation marks omitted); *see also Clark*, 510 F.3d at 394–95 ("A defendant therefore has a constitutional right to waive the right to assistance of counsel and present [his or] her own defense *pro se*, if the decision is made 'knowingly and intelligently.'" (quoting *Faretta*, 422 U.S. at 835)). Thus, there is nothing in the New York state courts' denial of any relief to Petitioner on this claim that would entitle him to federal relief under 28 U.S.C. § 2254.

Further, when Petitioner did have assistance of counsel, that counsel ably represented Petitioner despite overwhelming evidence against him. The trial court ruled for Petitioner on one of his requests to suppress evidence that resulted from an invalidly postponed arraignment. (Resp'ts' Ex. L at 56.) On direct appeal, where Petitioner was aided by counsel but also filed a supplemental pro se brief, Petitioner's conviction on the kidnaping count was reversed because it was "incidental to the rape" and so merged with the rape count under New York law. *People v. McFadden*, 692 N.Y.S.2d 393, 394 (App. Div. 1999). In sum, there is nothing in the record to indicate that, when Petitioner was represented by counsel, any of his counsel met either prong of the *Strickland* ineffectiveness test. *See Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). Thus, here too the New York courts' denial of any relief was not an unreasonable application of clearly established law. *See* 28 U.S.C. § 2254(d). And, to the extent Petitioner otherwise believes he was not well-served by his self-representation, the Record establishes Petitioner chose that course knowingly and voluntarily.

## III. CONCLUSION

As previously noted, Petitioner's remaining claims—which Petitioner did not reference in his objections to the R&R—are denied for the reasons stated in the R&R. Accordingly, it is

ORDERED that the Report and Recommendation dated March 30, 2011, is ADOPTED. It is further

ORDERED that Petitioner's writ of habeas corpus is DISMISSED with prejudice. It is further

ORDERED that because Petitioner has not made a substantial showing of the denial of a constitutional right, a Certificate of Appealability shall not be issued, *see* 28 U.S.C. § 2253(c)(2); *Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 111–12 (2d Cir. 2000), and the Court further certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this judgment on the merits would not be taken in good faith, *see Coppedge v. United States*, 369 U.S. 438, 445 (1962) ("We consider a defendant's good faith . . . demonstrated when he seeks appellate review of any issue not frivolous."); *Burda Media Inc. v. Blumenberg*, 731 F. Supp. 2d 321, 322–23 (S.D.N.Y. 2010) (citing *Coppedge* and finding that an appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith).

The Clerk of the Court is respectfully directed to enter a judgment in favor of Respondents and to close this case.

SO ORDERED.

Dated:    April 25, 2014
          White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

19